**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CAROLYN ROBINSON, | ) | CASE NO. 1:18-cv-1716 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Carolyn Robinson (hereinafter "Plaintiff"), challenges the final decision of Defendant Commissioner of Social Security (hereinafter "Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. §405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 14). For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

## I. Procedural History

On August 2, 2014, Plaintiff filed her applications for POD, DIB, and SSI, alleging a

disability onset date of May 29, 2014. (Transcript ("Tr.") 464-476). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 350-420). Plaintiff participated in the hearing on June 9, 2016, was represented by counsel, and testified. (Tr. 297-323). A vocational expert ("VE") also participated and testified. *Id*. On March 24, 2017, the ALJ found Plaintiff not disabled. (Tr. ). On June 20, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-9). Thereafter, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 12 & 17).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by improperly evaluating opinion evidence from Plaintiff's treating and examining physicians, (2) the RFC did not fully consider limitations arising from Plaintiff's diabetic neuropathy, and (3) a sentence six remand is warranted. (R. 12).

## II. Evidence

**A. Relevant Medical Evidence**[1]

1. **Medical Opinions Concerning Plaintiff's Functional Limitations**

On December 9, 2014, Hasan Assaf, M.D., examined Plaintiff at the State Agency's request. (Tr. 1510-1519). Plaintiff appeared to be in no acute distress, had normal gait normal, could walk on heels and toes without difficulty, could squat 80 degrees, used no assistive devices, and was able to rise from chair without difficulty. (Tr. 1512). Manual muscle testing

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only the medical opinions rendered by various medical sources, as the ALJ's discussion of those opinions is dispositive.

indicated Plaintiff's ability to grasp, manipulate, pinch, and perform fine coordination was normal bilaterally. (Tr. 1515).

On December 15, 2014, State Agency physician Michael Delphia, M.D., completed a RFC assessment and indicated Plaintiff could do the following: lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand/walk for six hours and sit for six hours each in an eight-hour workday; frequently climb ramps/stairs and balance; occasionally stoop, kneel, crouch and crawl; never climb ladders, ropes or scaffolds; and should avoid even moderate exposure to hazards. (Tr. 332-334). The doctor assessed no manipulative, visual, or communicative limitations. (Tr. 333).

On April 13, 2015, Eulogio Sioson, M.D., examined Plaintiff at the State Agency's request. (Tr. 1581-1587, 1638-1641). Plaintiff walked normally with no assistive device, but lost her balance trying to tandem walk. (Tr. 1582). In addition, she rose from a half squat with hip pain. *Id*. Plaintiff had tenderness over the right shoulder acromion and hip pain (greater on the left) during range of motion. *Id*. She complained of right hand weakness with gripping the dynamometer, but she could write legibly, handle a clipboard, button, and tie shoes. *Id*. Plaintiff had mild right upper extremity tenderness, no muscle atrophy, and negative Romberg's with mild right arm drift. *Id*. Based on his examination findings, Dr. Sioson opined that Plaintiff would be limited to sedentary work. (Tr. 1582). Manual muscle testing revealed Plaintiff's ability to grasp, manipulate, pinch, and perform fine coordination was normal bilaterally. (Tr. 1583).

On April 26, 2015, State Agency physician Esberdado Villanueva, M.D., completed a RFC assessment and indicated Plaintiff could do the following: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand/walk for six hours and sit for six hours each in an

eight-hour workday; frequently climb ramps/stairs and balance; occasionally stoop, kneel, crouch and crawl; and never climb ladders, ropes or scaffolds. (Tr. 362-363). Dr. Villanueva opined, with respect to manipulative restrictions, Plaintiff could only frequently reach overhead with the right hand, but had unlimited ability to engage in gross and fine manipulation. (Tr. 363-364). Finally, he opined Plaintiff should avoid even moderate exposure to hazards (Tr. 364).

On June 22, 2016, treating physician Dr. Vij completed a medical source statement in which she identified ischemic stroke, hypertension, and diabetes as Plaintiff's diagnoses, and indicated she had treated Plaintiff since November of 2011. (Tr. 1813). Dr. Vij indicated Plaintiff's symptoms included balance problems, poor coordination, loss of manual dexterity, unstable walking, numbness/tingling, other sensory disturbances, vertigo/dizziness, depression, emotional lability, and personality change. (Tr. 1813-1814). Under "clinical findings," Dr. Vij wrote "unstable gait." (Tr. 1814). She opined Plaintiff could walk one to two blocks without rest, sit for at least six hours in one-hour increments, stand/walk for about four hours in one-hour increments, and required a sit-stand at-will option. *Id*.

The doctor further opined Plaintiff would require unscheduled breaks every one to two hours for ten to fifteen minutes, and also required a cane or assistive device. (Tr. 1815). Dr. Vij indicated Plaintiff could frequently lift 10 pounds, occasionally lift 20 pounds, and never lift 50 pounds; could occasionally twist, crouch/squat, climb ladders/stairs but rarely stoop (bend); could grasp 60 percent of the time; and, could perform fine manipulation, reach forward, and reach overhead 30 percent of the time. (Tr. 1815-1816). Dr. Vij opined that Plaintiff had to avoid concentrated exposure to all environmental restrictions, was capable of low stress work, would be off task 25 percent of the workday and miss about one day per month as a result of her impairments or for treatment. (Tr. 1816-1817). Finally, Dr. Vij indicated that Plaintiff had

"limited vision." (Tr. 1817).

**B. Relevant Hearing Testimony**

During the June 9, 2016 hearing, the ALJ posed the following hypothetical question to the VE:

> This person is female, 53 years of age, high school education, same work background as Ms. Robinson. This person can lift, carry 20 pounds occasionally, 10 pounds frequently, can stand and walk six out of eight, can sit six out of eight … push, pull -- now this person is right dominant push, pull, frequent with the right upper extremity, constant with the left, constant food pedal, can frequently use a ramp or stairs, never a ladder, rope, or a scaffold, can frequently balance, occasionally stoop, kneel, and crouch, but never crawl, reaching, including overhead, constant with the left upper extremity, frequent with the right. Handling and fingering are frequent bilaterally. Feeling is constant. Visual capabilities are constant. Communication skills are constant. This person should avoid high concentrations of cold, wetness, and avoid entirely dangerous machinery and unprotected heights. This person can do simple routine tasks, but no complex tasks, and that's it.

(Tr. 313-314).

The VE testified that such an individual could not perform Plaintiff's past relevant work. (Tr. 314). However, the VE testified that such an individual could perform a number of unskilled jobs and identified the following examples: housekeeper, Dictionary of Occupational Titles ("DOT") 323.687-014 (700 jobs locally, 4,900 in Ohio, 135,000 nationally); sales attendant, DOT 299.677-010 (1,400 jobs locally, 7,300 in Ohio, and 215,000 nationally); and, food service worker, DOT 311.677-010 (500 jobs locally, 2,500 in Ohio, and 102,000 nationally).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security

Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since May 29, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: cerebrovascular accident, diabetes mellitus with neuropathy and retinopathy, osteopenia, degenerative joint disease, degenerative disc disease, hypertension, and affective disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can sit, stand, and walk six hours in a workday, and she can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can frequently push, pull and reach in all directions with her right upper extremity and frequently handle and finger with her bilateral upper extremities. She can frequently balance, occasionally stoop, kneel and crouch, but never crawl. She must avoid high concentrations of cold and wetness and avoid all exposure to dangerous machinery and unprotected heights. She can perform only simple and routine tasks.

6. The claimant is unable to perform any past relevant work (20 CFR §404.1565 and 416.965).

7. The claimant was born on ***, 1963 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 C.F.R. § 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 29, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 20-30).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

   **1. Weight Ascribed to Treating and Examining Sources**

Plaintiff's first assignment of error asserts that the ALJ erred by ascribing little weight to the opinion of her treating physician, Dr. Vij. (R. 12, PageID# 1883-1885). The Commissioner does not dispute that Dr. Vij was a treating source as defined in the regulations; and the ALJ's decision explicitly identifies Dr. Vij as a treating source. (R. 17, PageID# 1911, Tr. 27). Nevertheless, the Commissioner avers that the ALJ satisfied the procedural safeguards of the treating physician rule, and gave good reasons for discounting Dr. Vij's opinion. *Id.* Plaintiff also contends the ALJ failed to ascribe appropriate weight to the opinion of Dr. Sioson, a consultative examining physician. (R. 12, PageID# 1885-1887).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give "good reasons" for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d

395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.) Nevertheless, where a treating physician's opinion is so "'patently deficient' that the ALJ could not possibly have credited it[,] … [an ALJ's] failure to explain his 'good reasons' for not granting controlling weight to [the] opinion is properly viewed as harmless error." *Watters v. Comm'r of Soc. Sec. Admin.*, 530 Fed. App'x 419, 423 (6th Cir. 2013); *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 474–75 (6th Cir. 2016) ("Even if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error because the [medical source statement] here is 'weak evidence at best' and meets our patently deficient standard.")

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart,* 192 Fed. App'x 456, 465 (6th Cir. 2006) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the

record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

Here, the ALJ found Plaintiff was capable of performing light work with a number of additional restrictions. (Tr. 23). "The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs… 'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling ("SSR") 83-10, 1983 WL 31251 at *6 (S.S.A. Jan. 1, 1983). Dr. Vij's opinion found Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently—an opinion that is not inconsistent with the lifting/carrying demands of light work. (Tr. 1815). However, Dr. Vij also opined that Plaintiff could only stand for four hours in an 8-hour day in one-hour increments—a limitation more restrictive than the full range of light work requiring the ability to stand/walk for 6 hours. (Tr. 1814). After setting forth the contents of Dr. Vij's opinion, the ALJ addressed her opinion as follows:

> Dr. Vij's assessment was not supported by medical treatment notes through the

period showing that while the claimant experienced some neuropathy, she was able to ambulate effectively with no mention of using an assistive device (*see* Exhibits 13F; 15F). Therefore, I give Dr. Vij's opinion little weight.

(Tr. 27) (emphasis added).

The ALJ essentially gives only one reason for rejecting the several opinions of Dr. Vij— that medical treatment notes showed Plaintiff could ambulate effectively and there was no indication an assistive device was necessary. (Tr. 27). Assuming for the sake of argument that the ALJ gave a sufficiently good reason for rejecting Dr. Vij's opinion with respect to standing/walking limitations, including the need for an assistive device, the opinion is bereft of any explanation as to why a myriad of other limitations assessed by Dr. Vij were rejected. As noted above, Dr. Vij assessed significant manipulative limitations. (Tr. 1816), Specifically, she opined Plaintiff could grasp, turn and twist objects with her hand 60 percent of the time; and could perform fine manipulation, reach in front of her body forward, and reach overhead only 30 percent of the time. (Tr. 1816). She also indicated Plaintiff would need unscheduled breaks of 10-15 minutes duration during which she needed to lie down or sit quietly. (Tr. 1815). The RFC plainly does not incorporate these limitations, and so they were silently rejected without explanation.[2]

Furthermore, the decision lacks adequate discussion of the factors set forth in 20 C.F.R. § 404.1527(c)(2) as applied to Dr. Vij's opinion. In addition, even if the court construed the

---

[2] With respect to manipulative restrictions, the RFC found Plaintiff could "frequently push, pull and reach in all directions with her right upper extremity and frequently handle and finger with her bilateral upper extremities." (Tr. 23). Again, "frequent" is a term of art in the social security context that means "occurring from one-third [33%] to two-thirds [66%] of the time." SSR 83-10, 1983 WL 31251 at *6. These abilities are clearly less restrictive than the manipulative restrictions assessed by Dr. Vij.

ALJ's assertion—that "Dr. Vij's assessment was not supported by medical treatment notes …"—as applying to every opinion she rendered and not only to her opinion as to Plaintiff's ambulatory abilities, the decision would still be inadequate. The ALJ does not point to inconsistencies between Dr. Vij's medical source opinion and her treatment notes or otherwise explain his conclusion.[3] Courts routinely find that perfunctory assessments of treating source opinions do not constitute "good reasons" for their rejection. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (finding an ALJ failed to give "good reasons" for rejecting the limitations contained in a treating source's opinion where the ALJ merely concluded, without explanation, that the evidence of record did not support the severity of the assessed limitations); *Patterson v. Astrue*, 2010 WL 2232309 at *14 (N.D. Ohio June 2, 2010) (remanding where the "ALJ did not provide any rationale beyond his conclusory statement that [the treating physician's] opinion is inconsistent with the objective medical evidence and appears to be based solely on [claimant's] subjective performance.") (Vecchiarelli, M.J.); *Fuston v. Comm'r of Soc. Sec.*, No. 1:11-CV-224, 2012 WL 1413097 at *9 (S.D. Ohio Apr. 23, 2012), *report and recommendation adopted*, 2012 WL 1831578 (S.D. Ohio May 18, 2012) ("To facilitate meaningful judicial review the ALJ must state the evidence considered which supports his conclusion.")

The Commissioner also argues that Dr. Vij's opinion was inconsistent with the opinions of State Agency physicians Drs. Delphia and Villanueva. (R. 17, PageID# 1911). The court rejects this line of argument. First, the ALJ did not expressly discount Dr. Vij's opinion because it

---

[3] The court's opinion should not be misconstrued as suggesting that Dr. Vij's medical source statement should be ascribed any particular level of weight. It is admittedly contained in a checkbox format with limited explanation. (Tr. 1813-1817).

13

conflicted with or was inconsistent with the opinions of State Agency physicians. (Tr. 27).
Second, even if the court were to construe the decision as implicitly rejecting Dr. Vij's opinions
for this reason, such an action would amount to error. The Sixth Circuit has explained that:

> Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013); *see also Brewer v. Astrue*, No. 1:10-CV-01224, 2011 WL 2461341, at *7 (N.D. Ohio June 17, 2011) (White, M.J.) (finding that an ALJ may not base the rejection of a treating source's opinion upon its inconsistency with the opinions of non-examining State Agency consultants, as "[t]o do so would turn the treating physician rule on its head.")

Therefore, the court finds that the ALJ erred by failing to give good reasons for rejecting the limitations assessed by Plaintiff's treating physician, Dr. Vij.

Because the court finds error with respect to the ALJ's consideration of a treating source opinion, the court declines to address Plaintiff's argument that the ALJ did not properly weigh Dr. Sioson's opinion.

### 2. Remaining Assignments of Error

In the second assignment of error, Plaintiff argues the RFC did not adequately account for Plaintiff's visual limitations, specifically those stemming from her diabetic neuropathy. (R. 12, PageID# 1887-1889). In her third assignment of error, Plaintiff asserts that there is "new" and "material" evidence, which was submitted to the Appeals Council, that relate to her visual impairments. (R. 12, PageID# 1889-1890, *citing* Tr. 222-278). Because the court is remanding

this action based on Plaintiff's first assignment of error, the court declines to address these remaining arguments. The court does not express any opinion regarding whether the current decision adequately addressed Plaintiff's visual limitations or whether the additional evidence cited by Plaintiff relates to the relevant time period. Nevertheless, given the need for a remand, a new decision should be mindful of the other arguments raised by Plaintiff.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: September 23, 2019